# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Wells Fargo Bank, National Association, as Trustee for the benefit of the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2020-NNN, Commercial Mortgage Pass-Through Certificates, Series 2020-NNN, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:25-cv-06449 |
| -vs- | ) ) ) | |
| WIM FMB PORTFOLIO OWNER, LLC and WIM CORE PORTFOLIO OWNER, LLC. | ) ) ) | |
| Defendants. | ) | |

## CONSENT ORDER APPOINTING RECEIVER

AND NOW, this 10th day of July 2025, Wells Fargo Bank, National Association, as Trustee for the benefit of the registered holders of J.P. Morgan Chase Commercial Mortgage Trust 2020-NNN, Commercial Mortgage Pass-Through Certificates, Series 2020-NNN ("Movant" or the "Noteholder"), acting by and through its Special Servicer, CWCapital Asset Management LLC (the "Special Servicer") by and through its undersigned counsel, stipulate to the following Consent Order as follows:

It appearing that there is good cause to issue such an Order; and

It further appearing that the Noteholder is entitled to the appointment of a Receiver under the terms of the Loan Documents and that the WIM FMB and WIM Core (collectively,

"Borrower") has no objection to the appointment of a Receiver on the terms contained herein; therefore[1]

**IT IS** this 10ᵗʰ day of July 2025, by the United States District Court for the Northern District of Illinois, **ORDERED**, that the Motion should be, and hereby is, **GRANTED**; and

**IT IS FURTHER ORDERED**, that Alan Tantleff of FTI Consulting, Inc. ("FTI"), should be, and is hereby, appointed Receiver over the real property and improvements listed on the attached **Exhibit A** and other property as described in the Loan Documents (collectively, the "Property"), the subject of these proceedings, and is authorized and empowered to take any and all actions as are necessary and appropriate in good faith to carry out his powers and duties as Receiver, including the following:

a.     take immediate charge, possession and control of the Property subject to the terms of this Order, and hold, protect, preserve, insure, operate, manage, improve, repair, market for sale, secure and control the same, to the exclusion of all others (except as otherwise set forth herein or in future orders of this Court), until the earlier of a further Order of this Court or the consummation of a sale to a purchaser or purchasers as part of this receivership or the transfer of title following foreclosure sales and/deeds in lieu of foreclosure;

b.     take immediate charge, possession and control of all original records, documents, books, bank accounts, all bank records and statements for the two years preceding the date of this Order, credit cards, leases, security deposits of leases (if any), operating licenses, contracts, permits, keys, pass codes, intellectual property, websites, domain names, security codes, passwords, access codes, and all other assets and/or materials relating to the operation of the

---

[1]     Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Consent Motion for Appointment of Receiver (the "Motion") filed herein.

Property, including but without limitation, account permissions to internet third-party travel agencies and intermediaries, and all records stored in computer-readable memory;

c.      open new bank accounts in the name of the Receiver as necessary to carry out the obligations of the Receiver herein and to be added to any accounts of the Borrower relating to the Property, and endorse all checks that the Receiver receives or may receive that are payable to the Borrower and that represent payment of amounts due and owing in connection with the operation of the Property, with the cooperation of Noteholder;

d.      collect and receive all rents, income, fees, profits, issues, refunds, and proceeds accrued or accruing from the Property and any other sums of money owing to the Borrower, including any rents presently held in escrow by any tenant at the Property, and to use the same and such other funds as may become available to the Receiver by way of advancement or otherwise, in the payment of the expenses of the Receivership, and if cash on hand and collections received by the Receiver are insufficient to pay such expenses, to receive from the Noteholder from time to time funds advanced in an amount sufficient to pay such expenses as and when they come due, which advances shall be obligations owing to the Noteholder under the terms of the Note and other Loan Documents and secured by the Loan Documents subject to the terms of those Loan Documents, including but not limited by the mortgages listed on **Exhibit A** hereto (the "Mortgages"); provided however, that the Receiver and the Noteholder shall not be liable for any expenses incurred with regard to the Property prior to the Receiver taking possession of the Property, and shall not be required to use any rents or other revenues collected after the Receiver takes possession of the Property for payment of any expenses incurred with regard to the Property prior to the Receiver's taking possession of the Property; but notwithstanding the foregoing, the Receiver, with the prior consent of the Noteholder or by authorization of this Court, may pay those

expenses, if any, which were incurred in the normal and ordinary course of business of the Property and which were incurred prior to the Receiver taking possession of the Property as the Receiver deems reasonably necessary in the exercise of his business judgment; provided further that any cash management accounts and/or procedures in existence pursuant to the terms of the Loan Agreement shall remain in place and subject to the control of the Noteholder and any expenses paid directly by the Noteholder shall continue to be paid in the same manner as prior to the receivership, unless the Noteholder and Receiver agree otherwise in writing;

e. retain one or more property managers for the Property, which retention shall be on terms and conditions acceptable to the Noteholder in its reasonable business judgment notwithstanding anything else herein;

f. retain one or more brokers to market the Property, which retention shall be on terms and conditions acceptable to the Noteholder in its reasonable business judgment notwithstanding anything else herein;

g. employ, discharge and fix the compensation and condition for such agents, contractors, subcontractors, materialmen, architects, engineers, consultants, managers, brokers, professionals, accountants, and employees as are necessary to assist in holding, protecting, preserving, insuring, operating, managing, improving, repairing, marketing for sale, securing and controlling the Property and performing his duties as Receiver, subject to Noteholder approval;

h. enter into, modify, amend, terminate, renew, extend, and/or assume or reject such contracts as are necessary for the management, improvement, repair, security, marketing, insuring and preservation of the Property, subject to Noteholder approval;

       i.      enter into, modify, amend, terminate, renew, extend, and/or assume or reject any existing or new leases of the Property on any terms and conditions the Receiver may consider proper, and to obtain and evict tenants, subject to Noteholder approval;

       j.      market the Property for sale on terms approved by the Noteholder in its sole and absolute discretion;

       k.      sell the Property free and clear of subordinate liens and interests subject to the approval of the Court and the Noteholder in its sole and absolute discretion;

       l.      maintain such licenses, certifications and permits currently in effect and apply for, obtain and renew as necessary all licenses, certifications and permits required for the operation of the Property, and, with respect to any operation or activity that is now conducted on the Property, and that may lawfully be conducted only upon governmental license or permit, including but not limited to a liquor license, and to the extent permitted by law, exercise the privileges of any existing license issued in connection with the Property or any business transacted with respect to it, until further order of the Court;

       m.     take immediate charge, possession and control of all of the Borrower's right, title and interest in and to all proceeds from any claims made or to be made under any Property, casualty and other insurance policies that the Borrower maintains with respect to the Property (the "Policies"), as well as the right to act on behalf of the Borrower, Noteholder, Receiver and property manager under the Policies, to settle and compromise any such claims made or to be made with respect thereto;

       n.     protest assessments and pay taxes assessed against the Property, and all other bills and charges incurred in the ordinary course of business or by authorization of the Court in the exercise of the Receiver's duties with respect to the Property during the Receivership;

o.  receive funds advanced from the Noteholder in such amounts as the Receiver deems necessary or appropriate to protect, preserve, insure, manage, improve, secure and control the Property, which amounts shall be subject to approval by the Noteholder, and which amounts shall be secured by the lien of the Deed of Trust subject to the terms of the Loan Documents;

p.  retain Venable LLP and/or any other legal counsel, to advise the Receiver on legal matters that arise during the Receivership and to represent the Receiver in any litigation in which he may become a party, and to compensate these firms monthly and in the ordinary course at their customary hourly rate for attorneys and legal assistants who render services on the Receiver's behalf, plus expenses without further order of this Court;

q.  conduct an accounting of the operations of the Property from the time of the appointment of the Receiver and going forward;

r.  defend all actions at law or in equity which may be brought against the Receiver or against the Property;

s.  bring all actions, suits, proceedings, of law or in equity, which the cause may require for the proper management, operation, preservation, and protection of the Property and the Receivership estate; and

t.  carry out all of the Receiver's duties under the powers granted by the Mortgages, Loan Documents, by the decree of this Court, and/or by any other applicable law; and

**IT IS FURTHER ORDERED**, that Borrower and its partners, members, officers, directors, employees, managers, contractors, agents, and any and all other persons and entities retained, hired, or engaged by Borrower, deliver immediate possession of the Property to the Receiver, without any right of offset or recoupment; and

**IT IS FURTHER ORDERED**, that Borrower turn over to the Receiver, to the extent not already turned over, all keys, key fobs, pass codes, account permissions to internet third-party travel agencies and intermediaries, and similar items within seventy-two (72) hours after receipt of the Order and turn over all existing leases for the Property and all manner of operating bank accounts, books, and records relating to the Property with seven (7) days after receipt of the Order; and

**IT IS FURTHER ORDERED**, that Borrower turn over promptly to the Receiver any and all rents, income, revenue and profits arising out of the management, operation or ownership of the Property that it receives on or after the date that the Receiver takes possession of the Property; and

**IT IS FURTHER ORDERED**, that Borrower turn over promptly to the Receiver copies of all insurance policies in effect for the Property or any part thereof; and

**IT IS FURTHER ORDERED**, that the Borrower permit the existing insurance coverage for the Property to remain in force until the expiration of the current paid terms under such insurance Policies, and notify the insurance carriers immediately upon entry of the Order appointing the Receiver, and request that the Receiver, Noteholder and property manager be added to the liability insurance Policies as additional insureds thereunder on a primary and non-contributory basis waiving rights of subrogation for the benefit of the additional insureds, and obtain a waiver of subrogation in favor of Receiver, Noteholder and Property Manager on all property damage, business interruption and rent loss insurance policies for the Property. Noteholder shall be the loss payee on the property policy(ies) for the period of the Receivership. If the Receiver determines in his sole discretion that the existing insurance coverage for the Property is inadequate pursuant to the Loan Documents, the Receiver shall obtain additional

7

insurance coverage in compliance with the Loan Documents if commercially reasonably available. Upon the expiration of the paid portion of the existing Policies, the Receiver will be responsible for insuring the Property in accordance with the Loan Documents if commercially reasonably available, and may, at his option, keep in force the existing Policies or obtain new insurance policies for the Property, each of which shall name the Noteholder as an additional insured. No insurance company shall be permitted to terminate coverage or refuse coverage for the Property based upon prior unpaid premiums, claims history or because of the appointment of the Receiver pursuant to this Order. The insurance costs, including but not limited to premiums, co-insurance, deductibles, self-insured retentions, and claim handling fees, shall be operating costs of the Property. If the Property does not have sufficient funds to pay for the insurance costs, Noteholder shall pay directly or promptly provide additional funds to the operating account. Any refund or return of premium shall be paid to the Property; and

**IT IS FURTHER ORDERED**, that the Receiver is not required to post a bond; and

**IT IS FURTHER ORDERED**, that on or before the 20th day of each month, the Receiver shall make an accounting of all rents and revenues collected and all expenses paid for the previous month and file said accounting with the Court and serve a copy of said accounting on Noteholder and Borrower, and file a final report within forty-five (45) days after possession of the Property has been transferred to another party; and

**IT IS FURTHER ORDERED**, that any party having an objection to any report filed by the Receiver with this Court shall file a written objection with this Court no later than ten (10) business days after the date of the Receiver's filing of such report, and any objection not filed within the time prescribed by this Order shall be deemed waived; and

**IT IS FURTHER ORDERED**, that within sixty (60) days after possession of the Property has been transferred to Receiver, Receiver shall prepare a budget, which budget shall include capital maintenance and improvement items, and file said budget with the Court and serve a copy of said accounting on Noteholder and Borrower; and

**IT IS FURTHER ORDERED**, that the Receiver shall provide the following monthly documentation to the Noteholder certified by the Receiver as true, accurate and complete (collectively, the "Reporting Information"), with a copy to Borrower, no later than the 20th day of each month for the previous month: (a) balance sheet, statement of income and expenses, statement of cash flows, a monthly statement of income and expense forecast addressing year-to-date actuals and the remaining calendar year, and budget versus actual comparison report; (b) an aged payables report and an aged receivables report; (c) a capital expenditures report; and (d) bank statements with monthly reconciliations; and

**IT IS FURTHER ORDERED**, that during the pendency of this Receivership, all tenants of the Property shall pay all rents and other sums owing under leases directly to the Receiver; and

**IT IS FURTHER ORDERED**, that, subject to the terms of this Order, any funds advanced by the Noteholder or any other lender from time to time during the pendency of the Receivership shall be secured by the lien of the Mortgages subject to the terms of the Loan Documents; and

**IT IS FURTHER ORDERED**, that, unless otherwise agreed to by the Noteholder in writing or as ordered by this Court, the Receiver shall pay the excess of any receipts over budgeted expenses of the Receivership on a monthly basis or such other frequency as is acceptable to the Noteholder to apply against the indebtedness by the Note in accordance with the terms therein; and

**IT IS FURTHER ORDERED**, that the Receiver be compensated, without further order of this Court, from the rents, income and proceeds from the Property in accordance with the following schedule (all as further set forth in the proposal attached as **Exhibit B**):

The following fee schedule (the "12 Month Fee Schedule") shall apply for each of the first 12 months:

| Building Size | Flat Monthly Fee | Property Count |
|---|---|---|
| <50,000 SF | $1,250 | 24 |
| 50,001-200,000 | $3,125 | 6 |
| 200,001-350,000 | $3,750 | 7 |
| >350,001 | $5,000 | 3 |

With the below fee schedule for year 2 and thereafter:

| Building Size | Flat Monthly Fee | Property Count |
|---|---|---|
| <50,000 SF | $1,000 | 24 |
| 50,001-200,000 | $2,500 | 6 |
| 200,001-350,000 | $3,000 | 7 |
| >350,001 | $4,000 | 3 |

**Disposition Fee**:

If FTI concludes a sale of the Property or any portion thereof to a third party (other than to the Noteholder), then FTI will be compensated with a Disposition Fee equal to 0.25% of the Gross Proceeds of each sale.

**Expenses:**

Reimbursement for normal and customary out-of-pocket expenses, including the receiver bond and travel. As is normal and customary, FTI will retain counsel; such estimated costs and fees will be discussed with the Noteholder.

**IT IS FURTHER ORDERED**, that provided that if the rents, income and proceeds from the Property are insufficient pay the compensation proposed in **Exhibit B** and/or set out in the 12 Month Fee Schedule, and the Noteholder advances funds from time to time to pay compensation to the Receiver, such advances shall be obligations owing to the Noteholder under the terms of the Note and other Loan Documents and secured by the lien of the Mortgages; and

**IT IS FURTHER ORDERED**, that the appointment of the Receiver shall not impair the Noteholder's liens, rights or remedies arising under the Note, the Mortgages, or other Loan Documents or applicable law, including without limitation the Noteholder's interest in the rents, issues, profits, and revenues of the Property and Noteholder's ability to foreclosure and/or accept deed(s) in lieu of foreclosure for the Property or any portion thereof, and the appointment of the Receiver shall not constitute the existence of a lender in possession of the Property; and

**IT IS FURTHER ORDERED**, that immediately upon Receiver's request, all financial institutions with actual notice of this Order shall take such steps as are necessary to prevent Borrower from withdrawing, disbursing, or causing the diversion of any funds, cash, income, and deposits, in any of the accounts of Borrower and to cooperate with and turn over to the Receiver in securing possession of any portion of the Receivership estate that is in their possession, custody, or control; and

**IT IS FURTHER ORDERED**, that any third-party entity or utility company providing services to the Property, including, gas, electric, water, sewer, trash collection, telephone, communications, cable, internet, Wi-Fi or similar services, is prohibited from discontinuing such services to the Property based upon unpaid bills incurred by Borrower, and such utilities are prohibited from demanding that the Receiver deposit funds in advance to secure such services; and

**IT IS FURTHER ORDERED**, that the Receiver shall comply with all laws applicable to the operation of the Property as provided under any laws of the United States;

**IT IS FURTHER ORDERED**, that, (i) without limiting any other rights or immunities the Receiver may have at law or in equity, the Receiver and his employees, retained professionals, property manager, agents and attorneys shall have no liability for acts or omissions made by or on behalf of the Receiver in his capacity as the Receiver of the Property, except to the extent

11

attributable to the gross negligence, willful misconduct, bad faith, or fraud, of the Receiver; (ii) no action shall be brought against the Receiver or his employees, retained professionals, property manager, agents or attorneys relating to the performance of his duties under this Order unless permitted by the Court; (iii) the Receiver is acting solely in its capacity as a receiver and the debts of the Receiver are solely the debts of the Receivership estate; and (iv) except as set forth above, in no event shall the Receiver personally have any liability or obligations for the debts of the Receiver and/or the Receivership estate; and

**IT IS FURTHER ORDERED**, that nothing contained in this Order shall be construed as obligating the Receiver to advance his own personal funds to pay any cost and expense of the Receivership estate; and

**IT IS FURTHER ORDERED**, that, notwithstanding anything else set forth in this Order, the Receiver and his employees, retained professionals, property manager, agents and attorneys shall be entitled to reasonable compensation for services rendered and reimbursement of expenses related to the Receiver's duties, rights, and obligations under applicable law, this Order, and under any future orders of this Court, as first-priority administrative costs and expenses of the Receivership estate, and the Receiver may retain a reasonable amount of funds sufficient to cover any expenses incurred during the Receivership but not payable until after the Court's discharge of Receiver; and

**IT IS FURTHER ORDERED**, that the Receiver and any party that has appeared in this action may, at any time, upon notice to all parties who have appeared in this action, apply to this Court for further instruction and for further power necessary to enable the Receiver to properly fulfill his powers and duties; and

**IT IS FURTHER ORDERED**, that this Court shall retain jurisdiction of this action for any proceedings necessary to enforce compliance with this Order and the Receiver shall be subject to further orders of this Court.

SO ORDER:

United States District Court Judge


SO AGREED:

| | |
|---|---|
| **COUNSEL FOR PLAINTIFF:** | **COUNSEL FOR DEFENDANT:** |
| **VENABLE LLP** | **JONES DAY® - One Firm Worldwide** |
| By: */s/ Brent W. Procida* | By: */s/ Morgan R. Hirst* |
| Brent W. Procida | Morgan R. Hirst |
| 750 East Pratt Street, Suite 900 | 110 North Wacker Drive, Suite 4800 |
| Baltimore, Maryland 21202 | Chicago, Illinois 60606 |
| Tel.: (410) 244-7862 | Tel.: (312) 269-1535 |
| Fax: (410) 244-7742 | Fax: (312) 782-8585 |

# EXHIBIT A

**ILLINOIS**

| | PROPERTY | MORTGAGOR | TENANT | MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, AND FIXTURE FILING (eff. as of 1/15/2020) RECORDED | ASSIGN OF MORTGAGE (Effective as of 3/5/2020) |
|---|---|---|---|---|---|
| 1 | 1200 Lakeside Drive, Bannockburn, IL 60015 | WIM Core | Baxalta US Inc. (Shire) | File 7627011 Lake County Recorded January 23, 2020 | File 7660621 Lake County Recorded June 3, 2020 |
| 2 | 177 South Commons Drive, Aurora, IL 60504 | WIM Core | Metropolitan Life Insurance Company | Doc. R2020-008617 Dupage County Recorded January 24, 2020 | Doc. R2020-056208 Dupage County Recorded June 3, 2020 |
| 3 | 1299-1303 East Algonquin Rd., Schaumberg, IL 60196 | WIM Core | Motorola Solutions, Inc. | Doc. 2002840004 Cook County Recorded January 28, 2020 | Doc. 2019003063 Cook County Recorded July 8, 2020 |
| 4 | 5450 Prairie Stone Parkway, Hoffman Estates, IL 60192 | WIM Core | Tate & Lyle Americas LLC | Doc. 2002341069 Cook County Recorded January 23, 2020 | Doc. 2019139019 Cook County Recorded July 9, 2020 |
| 5 | 411 N. Seymour Ave., Mundelein, IL 60060 | WIM FMB | First Midwest Bank | File 7627016 Lake County Recorded January 23, 2020 | File 7660904 Lake County Recorded June 3, 2020 |
| 6 | 1301 N. Larkin, Joliet, IL 60435 | WIM FMB | First Midwest Bank | R2020006765 Will County Recorded January 22, 2020 | R2020042367 Will County Recorded June 3, 2020 |
| 7 | 812 W. Springfield, Champagne, IL 61820 | WIM FMB | First Midwest Bank | 2020R01212 Champagne County Recorded January 23, 2020 | 2020R09654 Champagne County Recorded June 3, 2020 |
| 8 | 1030 Dixie Hwy, Chicago Heights, IL 60411 | WIM FMB | First Midwest Bank | Doc. 2002341060 Cook County Recorded January 23, 2020 | Doc. 2019121040 Cook County Recorded July 9, 2020 |
| 9 | 4101 W. 183rd St., Country Club Hills, IL 60478 | WIM FMB | First Midwest Bank | Doc. 2002341048 Cook County Recorded January 23, 2020 | Doc. 2034440115 Cook County Recorded December 9, 2020 |

|  | PROPERTY | MORTGAGOR | TENANT | MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, AND FIXTURE FILING (eff. as of 1/15/2020) RECORDED | ASSIGN OF MORTGAGE (Effective as of 3/5/2020) |
|---|---|---|---|---|---|
| 10 | 16051 Weber Rd., Crest Hill, NJ 60403 | WIM FMB | First Midwest Bank | R2020006777 Will County Recorded January 22, 2020 | R2020042343 Will County Recorded June 3, 2020 |
| 11 | 1290 Steger Rd., Crete, IL 60417 | WIM FMB | First Midwest Bank | R2020006771 Will County Recorded January 22, 2020 | R2020042368 Will County Recorded June 3, 2020 |
| 12 | 170 N. State Rte 31, Crystal Lake, IL 60014 | WIM FMB | First Midwest Bank | 2020R0002824 McHenry County Recorded January 22, 2020 | 2020R0019676 McHenry County Recorded June 3, 2020 |
| 13 | 601 Pearson Drive, Genoa, IL 60135 | WIM FMB | First Midwest Bank | 2020000655 Dekalb County Recorded January 22, 2020 | 2020005203 Dekalb County Recorded June 9, 2020 |
| 14 | 324 E. Main St., Knoxville, IL 61448 | WIM FMB | First Midwest Bank | 1060919 Knox County Recorded January 28, 2020 | 1063542 Knox County Recorded June 3, 2020 |
| 15 | 800 S. State Street, Lockport, IL 60441 | WIM FMB | First Midwest Bank | R2020006756 Will County Recorded January 22, 2020 | R2020042291 Will County Recorded June 3, 2020 |
| 16 | 220 W. Main Street, Morris, IL 60450 | WIM FMB | First Midwest Bank | Doc. 590291 Grundy County Recorded January 24, 2020 | Doc. 592957 Grundy County Recorded June 3, 2020 |
| 17 | 1011 14th St., North Chicago, IL 60064 | WIM FMB | First Midwest Bank | File 7627013 Lake County Recorded January 23, 2020 | File 7660910 Lake County Recorded June 3, 2020 |
| 18 | 2 Main St., Park Forest, IL 60466 | WIM FMB | First Midwest Bank | Doc. 2002341054 Cook County Recorded January 23, 2020 | Doc. 2019107229 Cook County Recorded July 9, 2020 |
| 19 | 200 W. Corning Ave., Peotone, IL 60468 | WIM FMB | First Midwest Bank | R2020006774 Will County Recorded January 22, 2020 | R2020042315 Will County Recorded June 3, 2020 |

| | PROPERTY | MORTGAGOR | TENANT | MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, AND FIXTURE FILING (eff. as of 1/15/2020) RECORDED | ASSIGN OF MORTGAGE (Effective as of 3/5/2020) |
|---|---|---|---|---|---|
| 20 | 24509 W. Lockport St., Plainfield, IL 60544 | WIM FMB | First Midwest Bank | R2020006759 Will County Recorded January 22, 2020 | R2020042292 Will County Recorded June 3, 2020 |
| 21 | 224 N. Main St., Seneca, IL 61360 | WIM FMB | First Midwest Bank | 2020-01212 LaSalle County Recorded January 24, 2020 | 2020-07764 LaSalle County Recorded June 4, 2020 |
| 22 | 1425 Dekalb Avenue, Sycamore, IL 60178 | WIM FMB | First Midwest Bank | 2020000649 Dekalb County Recorded January 22, 2020 | 2020005204 Dekalb County Recorded June 9, 2020 |
| 23 | 3303 S. Sheriden Rd., Zion, IL 60099 | WIM FMB | First Midwest Bank | File 7627022 Lake County Recorded January 23, 2020 | File 7660882 Lake County Recorded June 3, 2020 |

**INDIANA**

| | PROPERTY | MORTGAGOR | TENANT | MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, AND FIXTURE FILING (eff. as of 1/15/2020) RECORDED | ASSIGN OF MORTGAGE (Effective as of 3/5/2020) |
|---|---|---|---|---|---|
| 1 | 10858 Pike Street, Crowne Point, IN 46307 | WIM FMB | First Midwest Bank | 2020-007247 Lake County Recorded January 29, 2020 | 2020-035621 Lake County Recorded June 12, 2020 |
| 2 | 1975 West Ridge Rd., Gary, IN 46408 | WIM FMB | First Midwest Bank | 2020-006813 Lake County Recorded January 28, 2020 | 2020-035622 Lake County Recorded June 12, 2020 |
| 3 | 915 W. Glenn Park Ave., Griffith, IN 46319 | WIM FMB | First Midwest Bank | 2020-006903 Lake County Recorded January 28, 2020 | 2020-035620 Lake County Recorded June 12, 2020 |
| 4 | 6611 Kennedy Ave., Hammond, IN 46323 | WIM FMB | First Midwest Bank | 2020-007026 Lake County Recorded January 29, 2020 | 2020-035624 Lake County Recorded June 12, 2020 |

**NEW JERSEY**

|  | PROPERTY | MORTGAGOR | TENANT | MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, AND FIXTURE FILING (eff. as of 1/15/2020) RECORDED | ASSIGN OF MORTGAGE (Effective as of 3/5/2020) |
|---|---|---|---|---|---|
| 1 | 501 U.S. Highway 22, Bridgewater, NJ 08807 | WIM FMB | Metropolitan Life Insurance Company | Book 7186, Pages 681-712 Instrument Number 2020004604 Somerset County Recorded January 30, 2020 | Book 7215, Pages 3349-3355, Instrument No. 2020022736 Somerset County Recorded June 3, 2020 |
| 2 | 334 Madison Avenue, Convent Station, NJ 07960 | WIM FMB | Metropolitan Life Insurance Company | Book 23705, Page 164, File Number 2020006818 Morris County Recorded January 31, 2020 | Book 23787, Page 1635, Instrument No. 2020034412 Morris County Recorded June 5, 2020 |

**VIRGINIA**

|  | PROPERTY | MORTGAGOR | TENANT | MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, AND FIXTURE FILING (eff. as of 1/15/2020) RECORDED | ASSIGN OF MORTGAGE (Effective as of 3/5/2020) |
|---|---|---|---|---|---|
| 1 | 5800 Northampton Boulevard, Norfolk, VA 23502 | WIM FMB | Amerigroup Corporation (Elevance Norfolk) | Instrument Number 200004837 Norfolk City Circuit Court Land Records Recorded February 28, 2020 | Instrument No. 200012329 Norfolk City Circuit Court Land Records Recorded June 3, 2020 |
| 2 | 602 South Jefferson Street, Roanoke, VA 24011 | WIM FMB | Anthem Health Plans of Virginia, Inc. (Elevance Virginia) | Instrument Number 200002516 Roanoke City Circuit Court Land Records Recorded March 6, 2020 | Instrument No. 20005722 Roanoke City Circuit Court Land Records Recorded June 9, 2020 |

**MISCELLANEOUS PROPERTIES**

| | PROPERTY | MORTGAGOR | TENANT | MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, AND FIXTURE FILING (eff. as of 1/15/2020) RECORDED | ASSIGN OF MORTGAGE (Effective as of 3/5/2020) |
|---|---|---|---|---|---|
| 1 | 200 Commerce Drive, Newark, DE 19713 | WIM FMB | AAA Club Alliance, Inc. | Instrument Number 20200121-0005452 New Castle County Land Records Recorded January 21, 2020 | Instrument No. 20200603-0044849 New Castle County Land Records Recorded June 3, 2020 |
| 2 | 2 Gannett Drive, South Portland, ME 04106 | WIM FMB | Anthem Health Plans of Maine, Inc. | Book 36354, Page 191, Document 3402 Land Records for Cumberland County Recorded January 21, 2020 | Book 36768, Page 276, Document 29222 Land Records for Cumberland County Land Records June 3, 2020 |
| 3 | 30 7th Avenue, South, St. Cloud, MN 56301 | WIM FMB | Capital One, N.A. | Abstract Document A1562306 Land Records for Stearns County Recorded February 3, 2020 | Abstract Document A1570540 Land Records for Stearns County Recorded June 3, 2020 |
| 4 | 1831 Chestnut Street., St. Louis, MO 63103 | WIM FMB | Anthem Blue Cross and Blue Shield | Book 02032020, Page 0115 Land Records for the City of St. Louis, Missouri Recorded February 3, 2020 | Book 06032020, Page 0080 Land Records for the City of St. Louis, Missouri Recorded June 3, 2020 |
| 5 | 5950 Airport Road., Oriskany, NY 13424 | WIM FMB | Metropolitan Life Insurance Company | Instrument Number 2020-002159 Land Records for Oneida County, New York Recorded February 14, 2020 | Instrument No. 2020-0015367 Land Records for Oneida County, New York Recorded November 6, 2020 |
| 6 | 9797 Springboro Pike, Dayton, OH 45342 | WIM FMB | Metropolitan Life Insurance Company | File No. 2020-00005891 Land Records for Montgomery County, Ohio, Recorded January 24, 2020 | File No. 2020-00032899 Land Records for Montgomery County, Ohio, Recorded June 10, 2020 |

| 7 | 700 Quaker Lane, Warwick, RI 02818 | WIM FMB | Metropolitan Life Insurance Company | Book 9440, Page 176, Instrument No. 00000816 Land Records for the City of Warwick, Rhode Island Recorded January 11, 2020 | Book 9535, Page 164, Instrument No. 00008200 Land Records for the City of Warwick, Rhode Island Recorded June 11, 2020 |
|---|---|---|---|---|---|
| 8 | 20 Houghton Street, St. Albans, VT 05478 | WIM FMB | Mylan Technologies, Inc. | Book 286, Page 979 Land Records for the City of New Albans Recorded January 24, 2020 | Book 360, Page 453 Land Records for the City of New Albans Recorded October 13, 2020 |
| 9 | 15200 West Small Road, New Berlin, WI 53151 | WIM FMB | United Wisconsin Insurance Company (United Heartland) | Document No. 4454737 Land Records for Waukesha County, Wisconsin Recorded February 19, 2020 | Document No. 4480161 Land Records for Waukesha County, Wisconsin Recorded June 3, 2020 |